```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY ROBINSON,              :   CIVIL ACTION
                               :   NO. 08-5113
     Plaintiff,                :
                               :
     v.                        :
                               :
                               :
PFPC, INC.,                    :
                               :
     Defendant.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MARCH 4, 2010

Before the Court is Defendant's motion for summary judgement. For the reasons that follow, the motion will be granted.

**I. INTRODUCTION**

Plaintiff Jeffrey Robinson ("Robinson") brought this lawsuit against his former employer, PNC Global Investment Servicing Inc. ("PNC")[1], alleging that his employment was illegally terminated as a result of gender discrimination, in violation of Title VII.[2]

---

[1] Plaintiff incorrectly named Defendant as "PFPC, Inc." in the Amended Complaint.

[2] In his Amended Complaint, Robinson asserts that he was: (1) discriminated against because of his gender in violation of Title VII (Count I) and (2) discriminated against because of his gender in violation of the Pennsylvania Human Relations Act (Count II).

1

Defendant moves for summary judgment on the grounds that Robinson has failed to establish a prima facie case of discrimination in violation of Title VII or, alternatively, has failed to demonstrate that PNC's articulated, legitimate, non-discriminatory reason for terminating him is pretextual. On December 10, 2009, Plaintiff filed an opposition to Defendant's motion. (Pl.'s Resp. to Def.'s Mot. for Summ. J., doc. no. 25.) On December 16, 2009, Defendant filed a motion for leave to file a reply in further support of the motion for summary judgment.[3] On January 19, 2010, Plaintiff filed a motion for leave to file a sur-reply in opposition to the instant motion.[4]

## II. BACKGROUND

### A. Plaintiff's Termination

Plaintiff became an employee of PNC in January 1982. He was last employed as a Quality Assurance Clerk in Defendant's Integrated Business Transaction Department ("IBTS"). He was terminated on or about August 1, 2006, after having been suspended a week earlier. Plaintiff was informed of his discharge via telephone by Valerie Walton-Singer ("Walton-Singer"), an Employee Relations Investigator. Walton-Singer told

---

[3] The Court grants this motion and will refer to Defendant's reply brief. (Def. Reply, doc. no. 26.)

[4] The Court grants this motion and will refer to the Plaintiff's sur-reply brief. (Pl.'s Sur-Reply, doc. no. 27.)

2

him that he was being fired for falsification of documents.[5]
Plaintiff acknowledged falsifying documents, but he alleges he did so at the direction of his second-level supervisor Helen Douglas-Givens ("Douglas-Givens"). Plaintiff also claims his direct supervisor, Diane Simpson ("Simpson"), was aware of this directive as well and monitored Robinson's completion of the assignment.

**B. Document Falsification**

During the spring and summer months of 2006, Plaintiff's department was in the midst of an outside audit. As part of the audit, in May 2006, Simpson instructed Plaintiff to find and compile certain documents required by the auditors, namely fax coversheets confirming the transmission of certain paperwork by the IBTS Department to brokers. (Id. at 25, 32.) After a search, Plaintiff told Simpson that he could not locate certain requested documents. (Id. at 36.) Simpson reported the

---

[5] As a PNC employee, Robinson was required to abide by PNC's Code of Ethics. (Robinson Dep. at 120-21.) Robinson received training in the Code of Ethics and agreed in writing that he had received, read, understood, and would comply with the Code of Ethics. (Id. at 119 - 127.) The Code of Ethics provides that to continue employment with PNC, employees must remain covered under PNC's "fidelity bond." (Decl. of Walton-Singer at ¶ 7.) According to PNC's "Bonding Requirements Policy," bond coverage may terminate for an employee as soon as PNC reasonably believes the employee has committed a dishonest or fraudulent act that was or may have been committed by the employee at any time, whether or not the act was committed while in PNC's employment. (Id.) When PNC becomes aware that employee is not covered under its fidelity bond, the employee becomes ineligible to perform work for PNC. (Id. at ¶ 9.)

3

problem to Douglas-Givens. Plaintiff claims that Douglas-Givens was concerned because, during the prior year's audit, her department could not produce those documents and she told Plaintiff that he needed to recreate the missing documents. (Id. at 48-51.) Specifically, he claims Douglas-Givens told him to backdate the fax machines on their floor and then fax documents from one machine to another - thereby creating a backdated fax transmission sheet. (Id.) Moreover, Plaintiff alleges Douglas-Givens directed him to get help from Venita White ("White"), a settlement clerk in the IBTS department, in changing the date on the fax machines, which he did. (Id. at 53-58.) Plaintiff claims this directive occurred in June 2006. (Id. at 57.)

Plaintiff admits he did re-create the documents and that it took him several weeks to complete the project. (Id. at 64.) Plaintiff claims that when he handed the documents to Douglas-Givens, he told her that this "wasn't right." He claims that Douglas-Givens told him not to worry about it and that she would take care of it. (Id. at 76.) Douglas-Givens then had the falsified documents submitted to the outside auditors. At no time did Plaintiff report any concerns he had to the human resources department or any other PNC management personnel.

### C. Investigation into Document Falsification

The auditors noticed the discrepancy and Walton-Singer

investigated the situation. (Decl. of Walton-Singer.) During Walton-Singer's investigation, she interviewed Robinson, Simpson and Douglas-Givens. During Robinson's first of two interviews with Walton-Singer, he lied about having any involvement in falsifying the documents. In his second interview, Plaintiff admitted to falsifying the documents. As described above, Plaintiff was fired for falsifying documents.

Walton-Singer interviewed Douglas-Givens on two occasions. She denied involvement in the falsification of the documents. (Def.'s Statement of Facts (SOF) at ¶ 31.) PNC claims that, aside from Plaintiff's allegation, there was no evidence that Douglas-Givens was involved in or knew of the falsification. (Id.) Therefore, Douglas-Givens was not disciplined or fired as a result of this incident.

As a result of Walton-Singer's investigation, Simpson was also terminated for failure to follow procedure and protocol when she failed to report Robinson's dishonest activities to her supervisor or to management once she learned of them.

## III. LEGAL STANDARD

### A. Motion for Summary Judgment

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). However, while the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B. Title VII**[6]

Title VII protects employees from discrimination by their employers on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. To prevail on a

---

[6] Because the analysis required for adjudicating Plaintiff's Title VII and PHRA claims is identical, the court will consider these two claims together. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317, n.3 (2000) (stating that since the analysis required for adjudicating a PHRA claim is identical to a Title VII inquiry "we therefore do not need to separately address" the PHRA claim).

discrimination claim based on indirect evidence,[7] an employee may rely upon the familiar three-step burden shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, a plaintiff must establish a prima facie case for discrimination. Id. at 802.  That is, a plaintiff must demonstrate 1) that he is a member of a protected class; 2) that he was qualified for the position in question; 3) that he was discharged; and 4) that he was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron v. SL Indus. Inc., 56 F.3d 491, 494 (3d Cir. 1995) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The Third Circuit has adopted a flexible view of this test, rejecting the requirement that a plaintiff compare himself to a similarly-situated individual from outside her protected class to raise an inference of unlawful discrimination. See Sarullo v. United States Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003).  Importantly, however, a plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision complained of. Id.  Although an example of a circumstance that can raise an inference of discrimination may be found when a similarly-situated employee

---

[7] Plaintiff does not claim that he has direct evidence of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the McDonnell Douglas framework).

outside of the protected class is treated differently from the plaintiff. See Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 602 (M.D. Pa. 2002).

Establishing a prima facie case creates a presumption of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).[8] Then, the burden of production shifts to defendant to set forth a legitimate, non-discriminatory reason for its action. Id. Notably, the Third Circuit has held that this is a "relatively light burden" because the defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Upon defendant advancing such a reason, the presumption of unlawful discrimination "'is rebutted' . . . and 'drops from the case.'" St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255 & n. 10 (internal citation omitted)). Then, plaintiff must be given the opportunity to "show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763; see also id. at 764 (noting that a Title VII plaintiff may not "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's

---

[8] Although the McDonnell Douglas framework shifts the burden of production to defendant, the ultimate burden of persuasion always remains with plaintiff. Burdine, 450 U.S. at 253.

8

proffered legitimate explanations"). To demonstrate pretext, plaintiff must provide evidence that would allow a fact finder reasonably to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." Id. at 764.

**III. ANALYSIS**

**A. Prima Facie Case**

It is undisputed that Plaintiff can establish the first and third elements of a prima facie case of unlawful gender discrimination. Plaintiff is a member of a protected class (male) and his employment was terminated. The parties dispute, however, whether Robinson has established the second and fourth prongs of a prima facie case - that he was qualified for the position he held and that he was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron, 56 F.3d at 494 (quoting Burdine, 450 U.S. at 253).

**1. Qualified for the position prong**

PNC argues that Robinson cannot satisfy the second prong of his prima facie case because he has admitted that honesty is a requirement to work at PNC and that he engaged in multiple dishonest acts. Robinson, in his deposition, testified that he lied and falsified documents, in violation of PNC's Code of Ethics. (Robinson Dep. at 55-58, 101, 119.) Robinson also

9

admitted that adherence to PNC's ethical code was a condition of his employment. (Id. at 121, 125.)

Because Robinson was terminated for cause, he has not met the second element by showing that he was qualified for the position from which he was terminated. See Fullman v. Potter, 480 F. Supp. 2d 782, 790 (E.D. Pa. 2007)(Robreno, J.) (employee who was terminated for cause cannot show second prong of discrimination prima facie case) aff'd 2007 WL 3215415 (3d Cir. Nov. 1, 2007); see also Sarullo, 352 F.3d at 797 (defendant was entitled to summary judgment where plaintiff failed to make a prima facie case of discrimination, namely that the second prong of McDonnell Douglas test is not met when an employee is terminated for cause).

Plaintiff argues that his termination is "disputed" and contends that the circumstances of his termination are not to be considered when evaluating the prima facie case. Plaintiff cites Weldon v. Kraft, Inc., for the proposition that an employer's subjective evaluation of an employee should be considered at the pretext stage of the McDonnell Douglas analysis. 896 F.2d 793, 798 (3d Cir. 1990). In Weldon, the court said "[w]e have held that while objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage

of the McDonnell Douglas analysis." Id.

Termination for cause for failing to abide by the Defendant's Code of Ethics is not a subjective determination. Rather, it is plainly objective. In Fullman, the plaintiff was terminated for failing to disclose pertinent information about his past work experience in his employment application. 480 F. Supp. 2d at 786. The plaintiff in Fullman admitted that he understood this omission was important and contrary to the employer's rules. This Court found the plaintiff in Fullman could not show that he met the second element of his prima facie case because he was terminated for cause. Id. at 790.

Under these circumstances, Plaintiff has failed to show that he was qualified for his position and cannot satisfy the second prong his prima facie case of gender discrimination.

### 2. Inference of Discrimination prong

Defendant also argues that Robinson cannot show that PNC failed to discharge similarly-situated female employees for dishonesty or that the circumstances surrounding his discharge give rise to an inference of gender discrimination.

#### a. Similarly Situated Employees to Robinson

Plaintiff has not shown that PNC failed to discharge similarly situated female employees. Plaintiff's allegation that he was singled out and treated differently because of his gender is not supported by the evidence in the record. Walton-Singer

11

investigated the matter, and after several interviews, concluded that Robinson falsified the documents and that Simpson violated PNC's procedure and protocol when she failed to report Robinson's actions as soon as she learned of them.  Both Robinson and Simpson (a female) were terminated.

Furthermore, Robinson was not similarly situated to Douglas-Govens or White, two female employees who were not terminated as a result of the incident.  Robinson was a Quality Assurance Clerk who admitted his wrongdoing and does not deny that he tampered with the fax machines, falsified documents or lied during the investigation.  However, Douglas-Givens is an Associate Vice President who was two management levels superior to Robinson.  She denied knowledge of, or involvement in, Robinson's actions during several interviews.  Therefore, Robinson's clear admission of culpability contrasts to the allegations against Douglas-Givens, which were not corroborated in Walton-Singer's investigation.

White, a clerk who reported to Simpson, was not terminated.  Plaintiff alleges that he asked White for instructions on how to change the date on the fax machines, and that she showed him how to do it. (Robinson Dep. at 55-56.) However, Plaintiff admitted that White never asked why Plaintiff needed this instruction, nor did he ever tell her why he wanted to change the date on the fax machine or the details behind the

12

document falsification scheme. (Id. at 56-58.) There is no evidence in the record, aside from Plaintiff's testimony regarding White's instruction, that she was involved in the falsification of documents. In fact, Plaintiff admits that White had no knowledge of the scheme to backdate the documents. (Id.)

Accordingly, Plaintiff, Douglas-Givens and White are not similarly situated employees for purposes of establishing a prima facie case of sex-discrimination. See Opsatnik v. Norfolk Southern Corp., 335 Fed. Appx. 220, 223 (3d Cir. 2009) ("Which factors are relevant [in determining whether an individual is similarly situated] is determined by the context of each case, but often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."); Davis v. Farmers Ins. Exchange, 2009 WL 1065159 a *5, 6 (N.D. Tex. April 17, 2009) (noting that factors to be considered when assessing whether employees are "similarly situated" include "job titles, work location within the company, supervisors, and the alleged misconduct.") (citing Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004).

### b. Casual Nexus between Robinson's Gender and his Termination

A plaintiff "must establish some causal nexus between

his membership in a protected class" and the adverse employment decision complained of. See Sarullo, 352 F.3d at 798 n.7.

Robinson's only evidence in support of his sex discrimination claim is his termination and Douglas-Givens' and White's lack thereof. He points to no other discriminatory event or occurrence, and does not allege to have been the subject of any derogatory or disparaging comments. His only argument of a causal nexus between his gender and termination is that Walton-Singer and Douglas-Givens acted in concert, as women, against him.

However, Plaintiff offers no evidence whatsoever to support his allegation that Douglas-Givens participated in his termination.[9] Plaintiff also does not contradict Defendant's assertion that Walton-Singer consulted with others involved in Robinson's line of business at PNC, including Jeff Sanders (Managing Director and Vice-President), who concurred with Walton-Singer's conclusions and recommendation for Robinson and Simpson's termination. (Def.'s SOF at ¶ 34.) Moreover, Plaintiff

---

[9] Plaintiff references Douglas-Givens' own deposition where she testifies that Walton-Singer told her, during an investigatory interview, that Simpson said Douglas-Givens ordered the document falsification. (Douglas-Givens Dep. at 39.) Plaintiff uses this statement, which relies on two hearsay statements, to support his own assertion that Douglas-Givens was involved in the document falsification. This statement is inadmissable hearsay. Plaintiff points to no other evidence in the record, beyond his own testimony, that Douglas-Givens was involved in the document falsification scheme.

14

ignores that Simpson was also terminated as a result of the investigation into the document falsification. See Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 645 (3d Cir. 1998) (a plaintiff "cannot selectively choose her comparator" in order to satisfy her burden of demonstrating that similarly situated persons were treated differently).

PNC correctly notes that Plaintiff, who bears the ultimate burden of demonstrating that his discharge was the result of sex discrimination, cannot rely on his own deposition testimony to establish that he was treated unfavorably as compared to similarly situated female employees. See, e.g., Watson v. Eastman Kodak Co., 235 F.3d 851, 857 (3d Cir. 2000) (plaintiff failed to identify through extrinsic evidence his pay rate, or those of comparable employees, and he provided no evidence of the last date he received a paycheck, and thus he failed to make the required evidentiary showing to sustain his unlawful compensation claim). Indeed, Plaintiff's only proffered evidence that Douglas-Givens and White were involved in the document falsification scheme is his own testimony.

As this Court has previously held, at the summary judgment stage, generalized allegations are deficient as a matter of law. See Clair v. August Aeropace Corp., 592 F. Supp. 2d 812, 823 n.19 (E.D. Pa. 2009) (Robreno, J.) ("At the summary judgment stage, such generalized allegations are deficient as a matter of

law. . . . This is so because in their absence, Clair fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record.") (citing Robinson v. Natl. Med. Care, Inc., 897 F.Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment)).

Accordingly, Plaintiff fails to prove a prima facie case of gender discrimination. However, the Court will complete the McDonnell Douglas analysis assuming arguendo that Plaintiff proved his prima facie case.

### B. Pretext

At the second step of the McDonnell Douglas analysis, PNC has advanced a legitimate, non-discriminatory reason for its decision to terminate Robinson. Namely, Robinson admitted to falsifying documents and lying during the internal investigation. Upon learning of Robinson's dishonesty and violation of the Code of Ethics, PNC terminated his employment. The evidence clearly demonstrates Robinson was terminated for violation of PNC's company's ethical code.

Plaintiff's claim also fails at the third step of the McDonnell Douglas analysis. Plaintiff argues: (1) of the three active participants in the documentation falsification only he was terminated, (2) the decision to fire him was made by a

female, Walton-Singer, and (3) when there was an effort to take disciplinary action against Douglas-Givens by another supervisor, Walton-Singer "thwarted it." (Pl's Resp. at 7.)

Plaintiff analogizes his case to Gupta v. Sears, Roebuck & Co., No. 07-243, 2009 WL 890585 (W.D. Pa. Mar. 26, 2009). In Gupta, the plaintiff purchased and received an improper discount in violation of Sears' discount and honesty policies. In support of her termination, Sears offered substantial evidence that Plaintiff purchased an item and accepted a discount that she understood did not apply to the transaction. In support of her claim that Sears' reasons for her discharge were pretextual, the plaintiff offered evidence that several individuals outside of her protected class were treated more favorably for similar policy violations.

Unlike the instant case, in Gupta, there was undisputed evidence that the employer had been aware of the violations of other employees, but had not terminated those employees as it had terminated the plaintiff. Id. at *15-19. Of the individuals focused on by the Gupta court, one openly admitted to the violation, and though the employer acknowledged the violations committed by at least two others, simply failed to discipline them.

The instant case is distinguishable from Gupta. There is no evidence in the record to support Plaintiff's claim that

17

Douglas-Givens or White violated PNC policy or deserved similar discipline, beyond Plaintiff's own testimony.  In fact, the record shows that Douglas-Givens was investigated by Walton-Singer and cleared of wrong-doing.  Plaintiff also testified that White had no knowledge of the document falsification scheme.  As discussed earlier, Plaintiff has presented no evidence that Douglas-Givens was involved in the decision to terminate him.  Moreover, he has presented no evidence that Walton-Singer "thwarted" any effort to discipline Douglas-Givens.  Therefore, there is insufficient evidence from which a reasonable jury could find that PNC's decision to terminate Plaintiff was motivated by discrimination.

Plaintiff challenges PNC for not having adequately investigated his version of events or examining Douglas-Givens' and White's actions.  However, the Third Circuit has emphasized that "we do not sit as a super-personnel department that reexamines an entity's business decisions." Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326, 332 (3d Cir. 1995) (citation omitted). Or, stated somewhat differently, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.

Plaintiff has failed to point to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." <u>Id.</u> Thus, Defendant is entitled to summary judgment on Plaintiff's Title VII claim for disparate treatment due to gender discrimination.

**IV. CONCLUSION**

For these reasons, Defendant's motion for summary judgment will be granted. An appropriate order will issue.